John B. EDWARDS, by Rosemary Edwards on her own behalf, Individually and on behalf of all members of a class of customers similarly situated

v.

**PHILADELPHIA ELECTRIC COMPANY**
and
The Pennsylvania Public Utility Commission.

Civ. A. No. 73–188.

United States District Court,
E. D. Pennsylvania.

Jan. 18, 1974.

Arnold Levin, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

Philip P. Kalodner, Harrisburg, Pa., for Penna. P. U. C.

Edward F. Mannino, Philadelphia, Pa., for Phila. Electric.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Plaintiffs instituted this class action suit seeking injunctive relief and damages for the alleged violation of their civil rights when Philadelphia Electric Company (PE) terminated plaintiffs' electricity without prior hearing. Defendants, PE and the Pennsylvania Public Utility Commission (PUC), have moved to dismiss the complaint pursuant to Rule 12(b) F.R.Civ.P. on the ground that the complaint fails to state a claim upon which relief can be granted. No hearing has been held and the Court's determination herein is based solely upon the averments set forth in the complaint which have been accepted as true for the purpose of these motions.

PE is a privately owned and operated Pennsylvania Corporation which is granted a monopoly by the State to provide electricity in the Philadelphia area. PE, being a public utility, is subject to the provisions of the Public Utility Code[1] and the regulations of the PUC made pursuant to the Code.

The named plaintiffs had their electric service terminated for an apparent failure to pay a bill allegedly due and owing PE. Part of the bill under attack is an alleged unwarranted and unlawful 3% surcharge. Plaintiffs, who do not appear to be challenging the reasons for the termination in the instant action, claim that a pre-termination hearing is a federal right to be afforded as a matter of due process. The gravamen of plaintiffs' claim for relief is that PE's action in terminating electric service amounts to such state action in violation of due process as to be subject to federal constitutional restraints under 42 U.S.C. § 1983.[2] Plaintiffs contend that pre-termination procedures should be established to allow PE's customers an opportunity to contest the discontinuance of service. As to the defendant PUC, we can only surmise that plaintiffs seek to have this Court require the PUC to affirmatively act to establish more effective termination procedures to eliminate what plaintiffs believe to be constitutionally intolerable circumstances.

Defendant PE argues that it is not acting "under color of State law" but merely as a private organization and that no deprivation of constitutionally protected rights is alleged by the plaintiffs. Defendant PUC argues that it is not a "person" as contemplated by 42 U.S.C. § 1983 and therefore, no jurisdiction can exist as to it.[3]

Where a complaint rests upon Section 1983 two elements must be established before there can be recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant has deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State." This second element requires that the plaintiff show that the defendant acted "under color of state law" for private action cannot form the basis for

---

1. Pa.Stat.Ann. tit. 66, § 1101 et seq. (1964).

2. 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. The PUC also argues that the plaintiffs have failed to exhaust administrative remedies and that an adequate remedy is presently available to dissatisfied customers. We note here that our disposition of the case avoids the necessity for considering these arguments.

relief under Section 1983. Adickes v. S. H. Kress Company, 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970).

In this action plaintiffs have named both PE and the PUC as defendants. Because of the different status of the parties defendant, different legal principles are applicable to each defendant. From the standpoint of Section 1983 analysis, the motions to dismiss will therefore be resolved separately. Lucas v. Wisconsin Electric Power Company, 466 F.2d 638 (7th Cir. 1972); Silas v. Smith, 361 F.Supp. 1187 (E.D.Pa., filed July 30, 1973).

■ As to PE, we need not reach the due process issue unless the threshold statutory requirement of whether PE acts under color of state law when it disconnects service is satisfied. If not, a cause of action does not arise under Section 1983 even if the utility's conduct would otherwise deprive plaintiffs of a federal right. Lucas v. Wisconsin Electric Power Company, *supra.*

The issue to be decided then is whether the state has so involved itself with the termination procedure of PE that the procedure has become action under color of state law. Similar questions have been answered in a variety of ways by the many courts which have heretofore faced the issue.[4] However, based upon the allegations in the plaintiffs' complaint, the factual situation which faces us seems to be controlled by the determination of our Third Circuit in the recent case of Jackson v. Metropolitan Edison Company, 483 F.2d 754 (3d Cir. 1973) rehearing denied October 26, 1974, aff'g 348 F.Supp. 954 (M.D. Pa.1972).

In *Jackson,* our Circuit determined that there was no cause of action under Section 1983 of the Civil Rights Act where the electric utility shut off the electricity to its customer in a situation similar to that alleged in the instant complaint. The basis for the Court's determination was its conclusion that there was no state action under color of state law. The Court analyzed the existing decisions and summarized them by stating that there may be a finding of state action or action under color of state law in the following situations:

1. When a private party's action occurred in conjunction with a business in which the state may be considered a partner or joint venturer in a profit making field (Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)); or

2. when a state statute or custom or usage compels the result (Adickes v. S. H. Kress Company, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); or

3. when a state agency affirmatively orders or specifically approves the activity in the course of its regulatory rule making (Public Utility Commission v. Pollack, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952)); or

4. when a private agency in effect is acting on behalf of and furnishing

---

4. The following are cases in which there have been findings of action taken under color of state law: Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153 (6th Cir. 1973); Ihrke v. Northern States Power Co., 459 F. 2d 566 (8th Cir.) vacated and remanded with instructions to dismiss as moot, 409 U. S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972); Bronson v. Consolidated Edison Co., 350 F. Supp. 443 (S.D.N.Y.1972); Hattell v. Public Serv. Co., 350 F.Supp. 240 (D.Colo.1972); Stanford v. Gas Serv. Co., 346 F.Supp. 717 (D.Kan.1972).
The following are cases in which courts have declined to find action taken under color of

state law: Lucas v. Wisconsin Electric Power Co., 466 F.2d 638 (7th Cir. 1972 (en banc)), cert. denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973); Martin v. Pacific Northwest Bell Telephone Co., 441 F.2d 1116 (9th Cir.), cert. denied, 404 U.S. 873, 92 S.Ct. 89, 30 L.Ed.2d 117 (1971); Particular Cleaners, Inc. v. Commonwealth Edison Co., 457 F.2d 189 (7th Cir.), cert. denied, 409 U.S. 890, 93 S.Ct. 107, 34 L.Ed.2d 148 (1972); Kadlec v. Illinois Bell Telephone Co., 407 F.2d 624 (7th Cir.), cert. denied, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95 (1969).

a typical government service (Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946)).

In order to determine whether the public utility in *Jackson* came within its category No. 3 above, the Court analyzed the regulatory plan pursuant to which the PUC regulates public utilities in Pennsylvania and came to the conclusion that Public Utility Commission v. Pollack was not controlling since there was no affirmative action by the PUC of the type which took place in *Pollack* and that therefore there was no state action or action under color of state law.

The Court concluded that the "action of the company in terminating service in this case was taken pursuant to its own regulations using its own personnel without entering onto the customer's private property,[5] without utilizing any state statute or regulation permitting re-entry on the customer's premises, and without specific direction or authorization of the regulatory body." [6] 483 F. 2d at 758.

In the instant case, as in *Jackson,* there is no allegation that the utility availed itself of a state granted right of entry onto the customer's property.[7]

Nor is there any mention in the pleadings as to whether there was a hearing before the PUC which would have required affirmative action by that agency. Thus, this Court must conclude that the regulatory controls of the PUC and the granting of the monopoly [8] by the state does not "in a practical way . . . add the necessary state support to private conduct so as to transform an issue of state regulatory policy into a civil rights case." 483 F.2d at 758. We shall, therefore, dismiss the complaint against PE.

We shall now consider the motion to dismiss this Section 1983 action against the PUC. When the Commissioners of the PUC act in their official capacity they are acting under color of state law within the meaning of Section 1983. This statutory requirement having been met, the Court must determine

---

5. *See* Gibbs v. Titelman, 369 F.Supp. 38 (E.D.Pa.1973) which holds that the act of self-help repossession is performed under color of state law.

6. In the *Jackson* case it was noted that the PUC Regulations on Tariffs, § VIII, provided:

Every public utility that [imposes] penalties upon its customers for failure to pay bills promptly shall provide in its filed tariffs a rule setting forth clearly the exact circumstances and conditions in which the penalties are imposed.

Pursuant to this PUC Regulation the utility promulgated and filed with the PUC the following regulation:

Company reserves the right to discontinue its service on reasonable notice and to remove its equipment in case of non-payment of bills or violation of the Pennsylvania Utility Commission's or Company's rules and regulations; or, without notice, for abuse, fraud, or tampering with the connections, meters, or other equipment of the company.

In the instant case the pleadings are silent as to the existence of a similar provision.

7. The Court in *Jackson* noted that:
The Lucas court placed emphasis upon the lack of entry upon the resident's premises

and implied that its decision might have been different had the utility availed itself of the state statute to enter the customer's home in order to cut off the power. It might be added that the Court in *Jackson* placed similar emphasis upon the lack of entry onto the customer's property.

8. In *Lucas* the Court recognized that the effect of a state-granted monopoly was to deny a displeased customer the practical remedy of taking his patronage elsewhere when treated unfairly by the supplier. Moreover, the monopoly status made more effective a utility's threat to discontinue service unless any arrearages were paid. Nonetheless, the Court concluded that the utility's monopoly had not such a significant impact on the resolution of customer disputes as to bring the "under color of state law" provision of Section 1983 into play. 466 F.2d at 656–657.

Similarly, the Supreme Court in *Pollack* noted:

[W]e do not rely on the mere fact that Capital Transit operates a public utility . . . Nor do we rely upon the fact that . . . Capital Transit now enjoys a substantial monopoly of street railway. 343 U.S. at 462, 72 S.Ct. at 820.

whether the PUC is a "person" within the meaning of Section 1983.

 In a suit for money damages under Section 1983, the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ruled that a municipal corporation was not a "person" within the meaning of the section. Courts have ruled that States are not subject to money damages under Section 1983 on the theory that they are no more "persons" than their municipalities. Gittlemacher v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969); Williford v. California, 352 F.2d 474 (9th Cir. 1965); United States ex rel. Armstead v. Pennsylvania, 303 F.Supp. 278 (E.D.Pa.1969). Moreover, state agencies which are but arms of the state government are not "persons" as contemplated by the Civil Rights Acts. Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969); Brown v. Pennsylvania, 311 F.Supp. 1176 (E.D. Pa.1970); Taylor v. Pennsylvania Board of Parole, 263 F.Supp. 450 (M.D.Pa. 1967). Some cases have indicated, however, that *Monroe* was limited to actions for damages and that cities were proper defendants under Section 1983 where equitable relief was sought. Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961). In the recent case of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the Supreme Court rejected this distinction stating:

> We find nothing in the legislative history discussed in *Monroe,* or in the language actually used by Congress, to suggest that the generic word "person" in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them.

 We must conclude, therefore, that the defendant PUC is not a "person" within the meaning of Section 1983. Hence, we shall dismiss the complaint against the PUC.