**Sarah SRACK, Plaintiff,**

**v.**

**NORTHERN NATURAL GAS COMPANY, a corporation, and Iowa State Commerce Commission, Defendants.**

**Civ. No. 74–8–W.**

United States District Court,
S. D. Iowa, W. D.

March 20, 1975.

**156**

Robert L. Bray, Council Bluffs, Iowa, for plaintiff.

Eugene Davis and Steven C. Cross, Des Moines, Iowa and T. N. Wright, Omaha, Neb., for defendant Northern Natural Gas Co.

Don Charles Uthus, Leo J. Steffen, Jr., and Daniel J. Fay, Des Moines, Iowa, for defendant Iowa State Commerce Commission.

## ORDER

HANSON, Chief Judge.

This matter is before the Court by way of cross motions for summary judgment.

The plaintiff brought this suit to recover damages allegedly suffered as a result of a utility service shut-off. She alleges that Northern Natural Gas Company and the Iowa State Commerce Commission acted under color of state law regulation to deprive her of due process of law pursuant to 42 U.S.C. § 1983.

The plaintiff has moved for summary judgment alleging that there are no material facts in dispute. The defendants responded by alleging that there are material facts in dispute and that summary judgment for the plaintiff should be denied.

The defendants also moved for summary judgment alleging that the Court is without jurisdiction to entertain this action since the facts of this case disclose "no state action."

■■■ This action is based on an alleged violation of the Civil Rights Act, 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Three elements must be established if an action is to be maintained under 42 U.S.C. § 1983. First, the resulting injury must have been caused by a "person." Secondly, the "person" must have been acting under color of state law. Finally, the injury sustained must result in a constitutional deprivation. In this case the plaintiff alleges that the defend-

ants acting under color of state law deprived her of due process in violation of the Fourteenth Amendment. The Fourteenth Amendment, Section 1, provides that:

No State shall . . . deprive any person of life, liberty, or property, without due process of law.

Thus, in order to find a violation of the Fourteenth Amendment, the alleged wrongful action must constitute "state action."

The Court will initially consider the defendants' motion for summary judgment.

## IOWA STATE COMMERCE COMMISSION

As noted previously, the first element which must be established in an action of this type is that the resulting injury was caused by a "person" within the meaning of 42 U.S.C. § 1983. In Edwards v. Philadelphia Electric Company, 371 F.Supp. 1313 (E.D.Pa.1974), the plaintiffs brought a civil suit against the Philadelphia Electric Company and the Pennsylvania Public Utility Commission for injunctive and monetary relief contending that the plaintiffs suffered constitutional deprivation when the defendants terminated the plaintiffs' electric service without a prior hearing. The Pennsylvania Public Utility Commission moved to dismiss contending that the complaint failed to state a claim upon which relief can be granted. In sustaining the Utility Commission's motion, the court noted " . . . state agencies which are but arms of the state government are not 'persons' as contemplated by the Civil Rights Acts." *Id.* at 1317. In the instant case, the Iowa State Commerce Commission is a statutory creation of the State of Iowa. *See* Section 474.1 et seq., Code of Iowa (1973). Thus, as a regularly constituted agency of the State of Iowa, the Iowa State Commerce Commission would not be a "person" within the meaning of 42 U.S.C. § 1983.

Furthermore, as an agency of the State of Iowa, the Iowa State Commerce Commission would be immune from suit by virtue of the Eleventh Amendment. The relevant Eleventh Amendment considerations are summarized in Edelman v. Jordan, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) wherein the Supreme Court indicated that:

. . . the Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. Hans v. Louisiana, 134 U.S. 1 [10 S.Ct. 504, 33 L.Ed. 842] (1890); Duhne v. New Jersey, 251 U.S. 311 [40 S.Ct. 154, 64 L.Ed. 280] (1920); Great Northern Life Insurance Co. v. Read, 322 U.S. 47 [64 S.Ct. 873, 88 L.Ed. 1121] (1945); Parden v. Terminal R. Co., 377 U.S. 184 [84 S.Ct. 1207, 12 L.Ed.2d 233] (1964); Employees v. Department of Public Health and Welfare, 411 U.S. 279 [93 S.Ct. 1614, 36 L.Ed.2d 251] (1973). It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. In Ford Motor Co. v. Department of Treasury, 323 U.S. 459 [65 S.Ct. 347, 89 L.Ed. 389] (1945), the Court said:

"[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.,* at 464 [65 S.Ct., at 350].

Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. Great Northern Life Insurance Co. v. Read, *supra;* Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573 [66 S.Ct. 745, 90 L.Ed. 862] (1946).

These principles have been recognized by the United States Court of Appeals, Eighth Circuit, in Jorden v. Metropolitan Utilities District, 498 F.2d 514 (8th Cir. 1974), a 42 U.S.C. § 1983 suit against a utilities district for an alleged wrongful "water shut-off" wherein the Court noted:

If this case be considered an attempted suit against an agency of the State of Nebraska, the recent United States Supreme Court case of Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), points out that the 11th Amendment to the United States Constitution precludes such an action unless the State has in some manner waived its sovereign immunity and consented to be sued, and there has been no such allegation or showing in this case.

Since this action is one in which a private party seeks to "impose a liability (against a state agency) which must be paid from public funds in the state treasury" wherein the state agency has not consented to be sued, the Court must conclude that the Eleventh Amendment would bar relief against the Iowa State Commerce Commission. Thus, for all the above reasons, the Iowa State Commerce Commission's motion for summary judgment must be sustained.

## NORTHERN NATURAL GAS COMPANY

■ Northern Natural Gas Company has also filed a motion for summary judgment. Even assuming arguendo that Northern Natural Gas Company is a "person" and did act under color of state law, the plaintiff cannot prevail against said defendant since there is no "state action."

The United States Supreme Court's recent decision in the case of Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), involves the same issue as raised herein. In *Jackson*, the Court found that the termination of utility service by Metropolitan Edison, a Pennsylvania utility company, did not constitute "state action" for purposes of a civil rights action based on 42 U.S.C. § 1983:

. . . While the Pennsylvania statute imposes an obligation to furnish service on regulated utilities, it imposes no such obligation on the State. *Id.,* at 353, 95 S.Ct. at 454.

The pertinent portion of the tariff provision in dispute in *Jackson* read as follows:

"*Rule 15.* Cause for discontinuance of service. Company reserves the right to discontinue its service on reasonable notice and to remove its equipment in the case of nonpayment of bill. . . . *Id.,* at 346, 95 S.Ct. at 451.

Apparently, the sole connection of the Pennsylvania Public Utility Commission with this rule was that under Pennsylvania law Metropolitan Edison Company was required to file its proposed tariffs and rules with said Utility Commission. *Id.,* at 354, 95 S.Ct. 449. In construing the effect of this tariff on the shut-off question, the Supreme Court noted that:

Approval by a state utility commission of such a request from a regulated utility, where the Commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the Commission into "state action." At most, the Commission's failure to overturn this practice amounted to no more than a determination that a

Pennsylvania utility was authorized to employ such a practice *if it so desired.* (Emphasis supplied.) Respondent's exercise of the choice allowed by state law where the initiative comes from it and not from the State, does not make its action in doing so "state action" for purposes of the Fourteenth Amendment. *Id.*, at 357, 95 S.Ct. at 456–457.

The situation in Iowa is somewhat different from that in Pennsylvania. The Iowa State Commerce Commission has adopted a *regulation* setting forth the grounds on which a termination of utility service is permissible. I.D.R. 19.4, ¶ 15 (1973). The pertinent subparagraph reads as follows:

Service may be refused or discontinued:

.    .    .    .    .    .

(h.) For nonpayment of bill provided that the utility has made a reasonable attempt to effect collection and has given the customer written notice that he has at least five days, excluding Sundays and holidays in which to make settlement of his account or make a deposit in accordance with 19.4(2), or have his service disconnected.

The said regulation does not say that the utility company must terminate service on these grounds. It merely allows the utility company to do so "if it so desires." The decision to terminate must originate with and be carried out by the utility company. In reaching that decision, the state is not involved. Therefore, this Court as the Court in *Jackson*, must conclude that on the facts of this case there is no "state action."

Accordingly, it is ordered that the defendants' motions for summary judgment be, and the same are, hereby sustained.

It is further ordered that the plaintiff's motion for summary judgment be, and the same is, hereby overruled.