CAMDEN COUNTY RECOVERY
COALITION, et al.,
Plaintiffs,

v.

The CAMDEN CITY BOARD OF EDU-
CATION FOR The PUBLIC SCHOOL
SYSTEM, et al., Defendants.

Civil Action No. 03–1073 (JEI).

United States District Court,
D. New Jersey.

May 16, 2003.

Frost & Zeff, by Mark B. Frost, Esq., Philadelphia, PA, Merovitz & Cedar, by Samuel Merovitz, Esq., Marlton, NJ, for Plaintiffs.

Szaferman, Lakind, Blumstein, Blader, Lehmann & Goldshore, P.C., by Robert E. Lytle, Esq., Phillip R. Boyce, Esq., Robert Cash, Esq., Amie C. Kalac, Esq., Lewis P. Goldshore, Esq., Arnold Lakind, Esq., Lawrenceville, NJ, Harvey C. Johnson, Esq., Camden, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is an order to show cause as to why a preliminary injunction should not be granted and Defendants' cross-motion to dismiss the complaint. The Court will grant the Defendants' cross-motion to dismiss under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. This case presents the issue of whether a local school board subject to state oversight under N.J.S.A. 52:27BBB–1 et seq., is a state agency for Eleventh Amendment purposes. We answer that question in the affirmative.

### I.

Plaintiffs in this matter include the Camden Community Recovery Coalition ("CCRC"), individual members of CCRC's board of trustees, and select parents of children enrolled in Camden City schools. Defendants include the Camden City Board of Education ("School Board"), individual members of the School Board, and the superintendent and director of plant services of the school district. Plaintiffs filed their complaint on March 13, 2003. In Count I of their complaint, against only the Defendant School Board, Plaintiffs allege violations of 42 U.S.C. § 1983. In Count II, against all of the Defendants, Plaintiffs allege violations of 42 U.S.C. § 300j–24(d) (the Lead Contamination and Control Act or "LCCA"). The remainder of the Counts of the Plaintiffs complaint allege state law causes of action through violations of the New Jersey Open Public Records Act, the New Jersey Environmental Rights Act, and public nuisance law.

The Camden City School District ("District") enrolls approximately 19,000 students in its thirty seven schools and serves as the public school system for the fifth largest municipality in the State of New Jersey. The majority of the schools in the district were built over fifty years ago. In their complaint, the Plaintiffs complain about high levels of lead contamination in the schools' water supply, the lack of testing for lead contamination, and alleged failure to publish the results of lead testing previously done in the schools. There is

no doubt that exposure to lead may have harmful effects on children, and the Plaintiffs allege that testing done at one District elementary school indicates that every child tested positive for lead in their blood, although not all tested positive for high levels of lead. Plaintiffs also allege that a number of District schools have tested high for lead in their water. Defendants note that they have installed automatic flusher systems in all of the District's schools, and that many schools are also being provided with bottled water in an effort to deal with the lead contamination problem.

Plaintiffs initially requested a preliminary injunction and on March 13, 2003, following a hearing, the Court issued an order to show cause why a preliminary injunction should not be issued. Defendants have filed a cross-motion to dismiss the complaint as well as a response to the order to show cause. Since the Court will grant the cross-motion to dismiss, the issues relevant to the motion for a preliminary injunction are moot and will not be discussed.

## II.

### A.

■ The Defendants argue that under Fed.R.Civ.P. 12(b)(1) this matter should be dismissed for lack of subject matter jurisdiction under the Eleventh Amendment to the Constitution.[1] Under the Eleventh Amendment, a federal court is prohibited from hearing a suit against a state unless the state has consented to such a suit. *Edelman v. Jordan*, 415 U.S.

651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Geis v. Bd. of Educ. of Parsippany–Troy Hills, Morris County*, 774 F.2d 575, 580 (3d Cir.1985). Even if the state is not a named party to the action, "as long as the state is the real party in interest," the suit will be barred. *Edelman*, 415 U.S. at 663, 94 S.Ct. 1347. *See also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir.1999); *Fitchik v. New Jersey Transit Rail Operations*, 873 F.2d 655, 658 (3d Cir.1989). The burden of proving that Eleventh Amendment immunity applies is put on the party attempting to assert such immunity. *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995).

■ The Supreme Court has clarified that "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Whether for monetary damages or for injunctive relief, any suit against a state in federal court is barred under the Eleventh Amendment. *See Cory v. White*, 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981).

■ The entity being sued in this matter is the Camden City School Board. Generally, school boards are not considered to be state agencies and are therefore not entitled to Eleventh Amendment immunity. *See Geis*, 774 F.2d at 580. In this matter, there are some differences in the way in which the Camden School

---

**1.** The Eleventh Amendment reads that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This language has been held to include any suits against a state in federal

court, regardless of whether the plaintiff is a citizen of the state or not. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Duhne v. State of New Jersey*, 251 U.S. 311, 313, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Board is financed and run that force this Court to determine whether it should be considered to be an arm of the state of New Jersey.

■■■■ The test for whether an entity is actually an arm of the state requires that the Court inquire as to: (1) the source of the entity's funding, meaning whether the payment of any judgment would come from the state; (2) the status of the agency under state law; and (3) what degree of autonomy from the state the agency enjoys. *Carter*, 181 F.3d at 347; *Christy*, 54 F.3d at 1144–45; *Peters v. Delaware River Port Auth. of Pennsylvania and New Jersey*, 16 F.3d 1346, 1350 (3d Cir.1994). The most important factor in the analysis is the first one, regarding the source of the entity's funding and whether any judgment will be paid out of the state's treasury. *Fitchik*, 873 F.2d at 659–60. While in this case the Plaintiffs argue that they are not asking for monetary damages, they are still asking for a judgment that will inevitably require the School Board to spend large sums of money on activities such as replacing the plumbing systems in many of its schools. Therefore, this factor of the analysis is still relevant to this case.

The vast majority of the funding for Camden city schools comes from the State of New Jersey. The tax base in the City of Camden is extremely low and simply cannot support the School Board's budget. Depending on the school year, 85% to 90% of the School Board's funding usually comes from state sources, with a 2003/2004 school year level of 86% state funding. Less than 3% of the School Board's budget is from city sources. There is no question that the vast majority of the School Board's funding is from state sources and that any judgment against the School Board will lead to the direct expenditure of

state funds in order to comply with such a judgment.

As to the second factor, the status of the agency under state law, the typical New Jersey school district is not an arm of the State of New Jersey. The School Board is separately incorporated, and it can sue or be sued, factors that imply that it is not an arm of the state. *See Christy*, 54 F.3d at 1144.

The New Jersey constitution requires that "the Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools." *N.J. Const.*, Art. VIII, § 4. While this requirement might imply state legislative control over New Jersey school districts, in reality most school districts operate autonomously even though subject to state legislation generally applicable to all school districts. In most instances the greater part of a school board's budget is raised by local real property taxes.

In carrying out its mandate to maintain a thorough and efficient educational system, starting in 1975 the New Jersey Legislature set up a mechanism to monitor the performance of individual local school districts. N.J.S.A. 18A:7A–10 and 11. School districts found to be deficient are subject to state monitoring designed to correct the deficiencies. N.J.S.A. 18A:7A–14. The legality of this oversight was upheld in *Matter of Board of Education of City of Trenton*, 176 N.J.Super. 553, 424 A.2d 435 (App.Div.1980), *cert. granted* 87 N.J. 332, 434 A.2d 81, *affirmed* 86 N.J. 327, 431 A.2d 808.

In 2002 the New Jersey legislature passed the Municipal Rehabilitation and Economic Recovery Act ("Act"), N.J.S.A. 52:27BBB–1 et seq.[2] This law gave the Commissioner of Education the right to

---

**2.** The original law, L.2002, c. 43, was effective July 22, 2002. An amendment to the Act designed to make it more directly applicable

to school districts, L.2002, c. 108, became effective on December 4, 2002.

subject any school district, already being monitored under N.J.S.A. 18A:7A–14, to additional controls. N.J.S.A. 52:27BBB–4(d). The Camden school district has received such a notice and is now subject to the provisions of the Act.[3]

Whatever may be the case with a typical New Jersey school board, the State of New Jersey now exercises significant control over the Camden City School Board, implicating the second and third factors relevant to an Eleventh Amendment analysis. Of the nine members of the School Board, three are directly appointed by the Governor of New Jersey. N.J.S.A. 52:27BBB–63(h). More importantly, the Governor has an unconditional veto over any action taken by the School Board.

N.J.S.A. 52:27BBB–64(b).[4] In essence, under the terms of the statute, the School Board cannot make any decisions without the approval of the Governor.

Because the vast majority of the School Board's funding comes from the State of New Jersey, and its autonomy is severely limited by the Governor's right to appoint three board members and to veto board actions, this Court finds that the Camden City School Board is an arm of the state for Eleventh Amendment purposes. The School Board is therefore not subject to suit in federal court. Accordingly, Count I of the complaint, based on 42 U.S.C. § 1983, will be dismissed since the Plaintiffs have named the School Board as the only Defendant in that Count.[5] The

**3.** Court challenges to the legality of the Act were rejected by New Jersey Superior Court Judge Andrew Smithson in a bench opinion on March 18, 2003. *Fulbrook v. McGreevey, et al.*, Docket No. 2901–02; *Camden City Bd. of Educ., et al. v. McGreevey*, Docket No. 3799–02; *Sloanel, et al. v. McGreevey*, Docket No. 3897–02; *Fulbrook v. New Jersey Economic Dev. Auth., et al.*, Docket No. 230–03.

**4.** N.J.S.A. 52:27BBB–64(b) reads as follows: "[a] true copy of the minutes of every meeting of a board of education described in subsection a. of this section shall be forthwith delivered by and under the certification of the secretary thereof to the Governor. No action taken at that meeting of the board of education shall have force or effect until 15 days after a copy of the minutes shall have been so delivered unless during that 15–day period the Governor shall approve those minutes, in which case the action shall become effective upon that approval. If, in the 15–day period, the Governor returns the copy of those minutes with a veto of any action taken by the board of education or any member thereof at that meeting, the action shall be null and void and of no effect."

**5.** Even if the School Board was not an arm of the state for Eleventh Amendment purposes the Plaintiffs would have a difficult time prevailing on the Defendants' cross-motion to dismiss the § 1983 claim under Fed.R.Civ.P. 12(b)(6). Plaintiffs make their § 1983 claim

using the state created danger doctrine, which emerged from language in the case of *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and which requires that the conduct of the defendant "shock the conscience." *Schieber v. City of Philadelphia*, 320 F.3d 409, 417 (3d Cir.2003). The Supreme Court has noted that conscience shocking conduct is difficult to prove and that it is extremely unlikely that a court would find liability under such a standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In this case, Defendants, working with an extremely limited budget and operating facilities built before there was awareness of the dangers of lead, have taken steps to deal with the problem. It is unlikely that their behavior rises to the level of that which shocks the conscience.

The Supreme Court has held that the government has no duty under the Due Process Clause to provide a safe working environment for its employees. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The decision in *Collins* distinguishes *DeShaney* and its progeny by holding that government employees are not in the custody of the state. *Id.* at 127–28, 112 S.Ct. 1061. The Third Circuit has held that public school students are also not in the custody of the state for due process purposes. *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372 (3d Cir.1992). It is doubtful that a local

charges in Count II of the complaint against the School Board, alleging violations of the LCCA, will also be dismissed.

### B.

■ The Supreme Court has carved out an exception to the general Eleventh Amendment rule regarding state immunity from suit in federal court. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under the exception, "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecomm. Corp. v. Bell Atlantic–Pennsylvania*, 271 F.3d 491, 506 (3d Cir.2001) (citing *Ex parte Young*, 209 U.S. at 159–60, 28 S.Ct. 441). While stating that "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night," the Supreme Court has attempted to delineate that difference. *Edelman*, 415 U.S. at 667, 94 S.Ct. 1347. An "ancillary effect on the state treasury" is permitted if the injunction issued by a federal court is prospective in nature and is the result of an order compelling state officials to comply with federal law. *Id.* at 667–68, 94 S.Ct. 1347. Yet if an injunction is retrospective in nature and resembles a monetary award against the state then the Eleventh Amendment will bar the suit. *Id.* at 665, 668, 94 S.Ct. 1347; *Laskaris*, 661 F.2d at 26. It is important to note that under the *Ex parte Young* exception there must be an allegation that there is an ongoing violation of federal law. *MCI Telecomm. Corp*, 271 F.3d at 506; *Hindes v. F.D.I.C.*, 137 F.3d 148, 166 (3d Cir.1998); *See also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (stating that the exception "does not permit judgments against state officers declaring that they violated federal law in the past").

In the Plaintiffs' complaint, the only federal cause of action asserted against the individual Defendants is in Count II, where the Plaintiffs ask for the production of the results of all lead testing from 1988 to the present and the production of School Board notes from the past. Plaintiffs do not ask for any form of prospective relief and do not allege any ongoing violation of federal law. The entirety of Count II involves alleged past violations of 42 U.S.C. § 300j–24(d)(2) and is completely retrospective in nature. As was noted above, federal courts are not permitted to enter injunctive relief against individual state employees or agents if the relief sought is retrospective in nature and does not concern an ongoing violation of federal law. Therefore, the charges in Count II against the individual Defendants must also be dismissed.[6]

---

school board has a federal constitutional obligation to provide a safe environment in its schools, although there certainly may be such an obligation under state law. It is hard to imagine a "thorough and efficient" education in a school environment that creates serious health risks.

**6.** As with the claims in Count I of their complaint, Plaintiffs claims in Count II might be dismissed by the Court under Fed R. Civ. P. 12(b)(6), had the Defendants not qualified for Eleventh Amendment immunity. It is arguable that 42 U.S.C. § 300j–24(d) is really a directive to the states, not to local school boards, to establish programs to deal with the problem of lead contamination in school drinking water. In § 300j–24(d)(1) the statute states that "each State shall establish a program" to assist in testing and remedying lead contamination in schools. Plaintiffs have not been able to show that the State of New Jersey actually established any such program under § 300j–24(d)(1). Plaintiffs claim that Defendants have violated § 300j–24(d)(2) by not making available the results of prior lead testing in the District, but the language of the statute states that the only testing that needs to be made available is that done pursuant to a program established by the State

### C.

■ The Court has determined that it must dismiss Counts I and II of the Plaintiffs' complaint, leaving only claims under state law remaining. Under the Eleventh Amendment, a federal court may not exercise pendent jurisdiction over state law claims against a state entity or state officials, regardless of whether the relief sought is monetary or equitable, retrospective or prospective. *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Therefore, since the Court has already determined that the School Board is an arm of the state, the remaining state law claims against the Defendants will be dismissed as well.[7]

### III.

For the reasons stated above, the Court finds that the Defendants enjoy immunity from suit in federal court under the Eleventh Amendment for all of the counts in the Plaintiffs' complaint.[8] Therefore, this matter will be dismissed under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

### ORDER GRANTING DEFENDANTS' CROSS–MOTION TO DISMISS THE COMPLAINT

This matter having appeared before the Court upon an Order to Show Cause why a preliminary injunction should not be granted and Defendants' cross-motion to dismiss the complaint, the Court having reviewed the submissions of the parties and having heard oral argument, for the reasons set forth in an opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this 16th day of May, 2003,

**ORDERED THAT:**

1. Defendants' cross-motion to dismiss the complaint is **GRANTED:**

2. The Order to Show Cause why a preliminary injunction should not be granted is **DISMISSED** as moot.

under § 300j–24(d)(1). Since New Jersey has not established such a program, the Plaintiffs may have no claim under § 300j–24(d)(2).

**7.** Had the Court determined that there was no Eleventh Amendment immunity in this case, and that the federal charges in Counts I and II should be dismissed under Fed.R.Civ.P. 12(b)(6), then the Court would have dismissed the remaining state law claims under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218

(1966) ("[c]ertainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well.").

**8.** The Court notes that there are Tenth Amendment issues that are relevant to this matter as well. *See ACORN v. Edwards,* 81 F.3d 1387, 1394 (5th Cir.1996). The Court will not discuss them because of its ruling that this matter should be dismissed under the Eleventh Amendment, rendering the issue of the Tenth Amendment moot.